So, Counsel, I understand you're splitting your time, so I would just ask that you police yourselves and figure out when your 10 minutes is done, because we won't let you go over collectively. I appreciate that, Your Honor, and thank you for allowing me this. May it please the Court, I'm David Mack, as Counsel for the Appellant, and with me is my colleague Mukti Patel, appearing from Princeton, New Jersey. She may reply in the rebuttal portion of this argument. The gateway issue that we face today, and I'd like to draw the Court's attention to this initially, is a limitation on the exemption 6, which identifies personnel or medical files and similar files as being the required nexus for preclusion. Personnel files emanate from employers and are provided by the employee or others. Medical files emanate from a health care provider. They are in no way similar to a national vessel registration list at all. The Court gave short shrift to this in its summary judgment grant, where he simply just said names and addresses are protectable, therefore, I find that it is a similar file. We take issue with that. These are operative elements in a statute. Medical personnel and similar files. Well, how does that square with Minis, where I think the list of people who applied for boating permits were protected? So obviously the statute has been used, the exemption has been used to extend beyond just medical lists. We understand the precedence there where it's maybe expanded. We're suggesting that the expansion is perhaps too great, that the delimiting language of the statute itself has been essentially ignored. Secondly, we submit that Minis was essentially overruled by the Department of Fair Labor Relations Act ten years later, and it's in our brief, where, if you recall Minis, the entire basis of the Court's decision was essentially that there was a commercial purpose in seeking the information by the requester. And the Supreme Court of the United States ten years later said that is not relevant. That is not relevant. So the entire Minis case is essentially based on a false legal error, that is that commercial purpose matters. We submit it does not. Well, but it does in terms of the invasion of privacy concern, which Minis turns on and other cases have turned on. The invasion of privacy may descend from, or the fact you're going to get unsolicited commercial communications, phone calls, whatever. That might result from, in this case, your client's commercial motivation, but the concern isn't based on your client's commercial motivation. The concern is that will lead to an unwarranted invasion of privacy by people getting unsolicited solicitations. So I don't understand how the statement that intent isn't the point really diminishes the concern for invasion of privacy. Your Honor, the test for privacy essentially is, does the information contain damaging, embarrassing, or financial information? Well, if it's going to cause me to get a bunch of phone calls, I mean it may just add to the spam phone calls that come in now, but that's something I don't want. That's an invasion of my privacy. It'd be done by mail. Your information, Your Honor, would be done by mail, not email or text. My wife assures you I get too much solicitations by mail too, and she's tired of carrying them through the post office. We politely submit that's not an invasion of privacy. Receiving mail is not an invasion of privacy. But you're, you know, potentially you are acquiring the addresses and names of homeowners, of vessel owners, and their home addresses. That's far more than just a casual infringement. You're acquiring information about people who own boats, perhaps for recreational uses, and the Constitution has given special regard for the homes. Why isn't that a legitimate interest, privacy interest? Well, there's a number of issues here that cut against that point, Your Honor, I believe, we believe, and is that, you know, boats are public property, meaning they're viewed in public, not they're public property. Houses are public property, meaning the records of them are viewable in the county recorder's office. The DMV has all of the listings of vehicles. This is no different. This is the kind of personal property that you operate on the water in full view of everybody. You put it in a slip. But I don't know that that boat is owned by that person who lives over there. It's the connection of those two things that raise privacy concerns. I understand that, Your Honor, but if I may, that what this Coast Guard did is they hand-redacted, which is a silly exercise in our view, 250,000 names and addresses and left in LLCs, trusts and estates, and other things which have personal names in them and addresses which are likely home addresses. So this is an arbitrary or capricious, as we like to say, standard. They're just simply deciding. They should have taken back more. Pardon me? They should have taken back more. I mean, your argument, too, isn't that their selection criteria was defective because what you're arguing now suggests, oh, they didn't take out enough, so should we let them go back and do over and take back more? That doesn't lead anywhere. We're saying it the other way, Your Honor. We're saying it the other way. Judge Sanchez makes the point about the disclosure of the personal information, addresses and so forth and so on. We're saying that's visible and available all over the place. I can go to the county recorder's office right now and find somebody who owns a house. Well, then your client's got an alternative. Which is? Well, you're saying this information is freely available, so what's the harm? They can get it someplace else. Where else could they get this information? Not the vessel information so much. Well, that's sort of the point. It's the connection. Well, okay. Again, medical personnel and similar files. We're hanging our hat on case law that says names and addresses can be private. But it's not a per se rule. Please understand that. The case law does not say that. We're not saying it's a per se rule. Indeed, where information is available from the county recorder of deeds or whatever, we can understand it. But we haven't been pointed to an alternative source of this information, which seems to flow directly into the problem that Minnis said. That's non-trivial privacy interest that's invaded. Okay. Accepting that for a moment for argument purposes, and we have accepted it in our brief. We don't accept that proposition, and we're arguing against it. But accepting it, it's de minimis. Okay? These guys, the U.S. Coast Guard, for decades has revealed all of this information. We ourselves, my client, has been accessing it since 2015. As has other boat registration non-profits and for-profits. There's two kinds. Why is your client trying to get the updated list? It must find value in the updated list. Because people transfer ownership. Well, isn't that the point? That you've already got the old list, but you understand the new list is different. You want to take advantage of the differences, and that, when under Minnis, would be a non-trivial privacy interest. No, no. That's legal error. It is not legal error. Let me try this again. Okay. Your motivation of invading the privacy of those people may be commercial, but the exemption isn't aimed at the motivation. The exemption isn't aimed at avoiding what Minnis holds as a non-trivial privacy interest. And then you've got to balance against whatever the benefit is. We haven't gotten to that part yet, but it's out there, too. The benefit is it's a public registration. It should be accessible to the entire U.S. population. Boats have been viewed as important for commercial usage, for waterways, for law enforcement basically getting certificates of who owns a boat, for bank and insurance lenders. This is in our summary judgment motion. It's not so much in our brief. But their purposes are legion. How do you know what the NBDC is doing unless you can get this list? You cannot. This is not, by the way, the underlying documents that are registered. There's a certificate. Let's take renewal, for example. Renewal is the most common issue here. It has to be done annually, as does initial registrations upon purchase, as does transfers upon sale. But the main one is renewal. On renewal, there's a document filled out, if you will, virtually with fields filled in, which gives information. Not all of that information is posted. Now, what is posted that we're requesting is simply just a list, line item by line item, of all of the registrations. It helps this industry. The GAO report says, which the judge excluded, that the NBDC is not well-operated. I'm being nice. It had a lot of criticism of it. Tie this together for me. How does that information about vessel owners help you understand why NBDC is not well-operated? Because they're delayed in the renewals. But what does this information have anything to do with delay? Well, because you acquire lists. For instance, you'll have a list, and then you'll have a list six months later, which you can download for 50 years and acquire. We put that in on the record. It's not denied that for at least whatever, decades, this information was publicly available without restraint, and there's no limitation on its usage with the U.S. government. They don't say this is private. We won't reveal it. Nowhere. It seems pretty attenuated to me that you're banking on that if you keep renewing this list every six months, somehow you're going to infer how delayed NBDC acts with its operations, as opposed to an inspector general report that laid out in great detail other things that are going on with the agency. Vessel owners don't know what's going on either. You see, without an intermediary like us, like our client, vessel owners are pretty much clueless. They don't necessarily know where to go. They don't know how to go, and what we're serving as a mail notice, let's take that as an example, gives notice to a vessel owner that says, well, I don't own the vessel anymore. This is erroneous, or I sold it. So, I mean, this is all about maintaining a public registry. NOAA says this is a public registry, and the Coast Guard statute, which we cited, says they have to update it. I'll give you that cite here in a minute. They have to update it. It's U.S. Code 1213A, which we cite in our brief with just simply a sentence, and we put it in the underlying motion. The court didn't acknowledge it. It's just been traditionally a U.S.-wide practice going back probably to the early 1800s. You're cutting into your colleague's time, so you might be mindful of that. Thank you. I'm going to say thank you, your court, for your kind questions and your careful thought, and I'm going to pass and save for Mukti on any rebuttal. Thank you. Oh. I'm sorry. Are you going to continue? You have collectively. Three and a half minutes left. That's going to be for rebuttal? That's for rebuttal. Okay. Thank you. Good morning, your honors, and may it please the court, Assistant U.S. Attorney Ryan Chapman for the United States Coast Guard. Your honors, the district court correctly granted summary judgment for the Coast Guard when it held that Exemption 6 of FOIA did not require the disclosure of the names and home addresses of the nearly 300,000 individual vessel owners at issue in this case. The district court correctly recognized that this list implicated a significant privacy interest, particularly in light of the commercial solicitations that Maritime admits will occur if this information is released. Against this, Maritime has not advanced a public interest under the FOIA or shown how the release of this personal information would significantly advance the public's understanding of the Coast Guard's activities. How is this really different from real property records? I mean, you can go to it. The office varies from state to state, county to county. You can go and find out who owns a given property. Why shouldn't that information be, or I guess auto registrations, why shouldn't a boat be subject to the same kind of disclosure? Well, your honor, I'd like to clarify the issue. The issue isn't the boat itself. It's the names and home addresses of the boat owners. It may not be the property, but you're interested in who owns that property, and that's the information you can get from the county recorder's office. That's correct, your honor. But the Supreme Court faced this question in the Federal Labor Relations Authority case where there the Supreme Court noted that individuals' privacy interests are in the dissemination of that information, and just because that information may be available in some public form elsewhere, that privacy interest is not diminished in the further dissemination, and that's the issue here. Home addresses may be available somewhere, but this list associated with these particular characteristics is not, and Maritime has not shown how the release of this list significantly advances the public interest. Well, I'm actually trying to focus a slightly different subject, which is, and it may not be our decision, I get that, but if the argument is that, look, home or property, real property, ownership information is readily available through state and local governments, how great could the privacy interest be? Sure, there's some privacy interest in that somebody can find out what property I own or conversely can find out who owns the property at this given address, but we accept that, and I think the argument being made is the same principles in defining how great the privacy interest is should be applied to boats. If we're willing to accept that as an acceptable invasion of privacy for real property, why shouldn't it be acceptable as a minimal invasion of privacy for boats? So I'd unfortunately challenge the premise of Your Honor's question just a little bit, that we don't necessarily accept that invasion of privacy for homes, and this is in our briefing, that the strength of the privacy interest depends on the associated characteristics, and here the associated characteristic is not simply that these individuals own a boat. It is all the characteristics about that boat that are on the public list of the merchant vessels of the United States data file, and I'd point the Court's attention to pages 126 to 31 of the record where a sample from the list was given to the Court, which showed over 70 different categories of information about these vessels, ranging from their home port, their characteristics, their home materials, and to including their current documentation status. That information is already public and tied to each individual boat, and in balancing the factors, Maritime has the burden of showing that the additional information they ask for, even if the public interest here is minimal, but more than de minimis, would still significantly advance the public's understanding of the Coast Guard's activities, and that is where Maritime fails. Now, I would like to just address some of the points raised by Maritime in their oral argument. First, the idea that this list does not constitute a similar file. I'd note for the Court that this argument was not raised in the briefing and should be deemed waived. However, if the Court does consider the argument, the Supreme Court has recognized that similar files has a broad definition, and regardless of the format of the file or the document, it applies to any government document that has personal information about individuals. So this list of name and addresses would constitute a similar file, and this Court and the Supreme Court have recognized that similar lists are similar files. Second, Your Honor, I'd just like to address the status of the Minis case, which Maritime argues has been overruled. First, Maritime does not show how Minis fails under the Miller v. Gammie standard, which states that it must be clearly irreconcilable with subsequent Supreme Court precedent. That standard was not addressed anywhere in the briefing. But second, Your Honors, the case that Maritime points to, the Federal Labor Relations Authority case, actually upholds the same reasoning in Minis as the District Court used it here. There, the Supreme Court said that unwanted mailings and commercial solicitations at the home are a protectable privacy interest, and the Court further considered the fact that the union in that case, seeking the names of the government employees, admitted that it would contact those government employees. So there, the Supreme Court recognized that there was a sufficient privacy interest, which is the same reasoning the District Court applied here today. Now, I'd like to address just two more points that Maritime made. First, the idea that the Coast Guard did not redact information from trusts and LLCs. This argument was not raised in the briefing as well, but I'd point the Court to the Supreme Court case FCC v. AT&T, 562 U.S. 397. There, the Supreme Court held that the term personal privacy in FOIA refers only to natural individuals. It does not refer to corporations or otherwise nonhumans. So that is why the Coast Guard limited its redactions to the home addresses of individuals. Lastly, Your Honor, the idea that this information was public. Can I ask, did you redact business addresses of individuals? So let's say it's owned by an individual, not a corporation or an entity, but could they have listed a business address as the applicable address that would have been disclosed? I don't believe that information was redacted, Your Honor. I don't have the actual redactions in front of me, but the arguments today are confined to home addresses. They are? Okay. Yes, Your Honor. What would the Coast Guard or whoever maintains this list know? If I turn in my registration material and happen to list my business address for whatever reason, I don't know, does the form say what kind of address it is? I don't believe the form is in the record, Your Honor, so I can't answer the question. I haven't seen it, so I'm just guessing here. I mean, there are a lot of people that avoid using their home addresses, but if the Coast Guard doesn't know, it just knows that John Smith says this is the address, and that's all they've got to work with. I understand Your Honor's question, but I don't believe that information is in the record, and so I will say that the arguments today are confined to home addresses. So if there were addresses that were business addresses, do you believe that there's a diminished privacy interest in an individual's business address rather than their home address? Well, I think under this Court and the Supreme Court's precedent, the privacy interest would be diminished in that case, but not necessarily de minimis, because the Court would still have to balance the factors, and Maritime would still have to show how release of that information would significantly advance the public interest. And as the Supreme Court stated in the federal labor case, even a minimal public interest against a non-existent public interest would still be worthy of protection. Unless the Court has any further questions? No. Then we would ask the Court to affirm. Thank you, Your Honors. Thank you. Okay, Ms. Patel, your turn. Oh, your volume is off. I did the exact thing they told us not to do is forget to unmute. That's right. You're not the first person I wish I could say. I'd never done it myself. May it please the Court. I think the central question here is what information is actually being revealed by disclosing the name and address information? Because I don't believe anybody is arguing that name and address information is per se protected. It is protected based on what information is actually being revealed. And that is, is there any information that is damaging, sensitive, or specific financial information is the standard that runs through the case law whereby it should be protected and has a privacy interest? So I think this case, very analogous to the Washington Post case that we've cited in our briefing, where the issue was disclosure of name and address information of farmers that received subsidies. And it was the same situation. The farmers could have had personal addresses or business addresses. And the information that was being sought was the name, the address, and the amount of the subsidy received. And there the Court said that the exemption did not apply, and this information could be disclosed because it wasn't, you know, the interest in determining whether the subsidy program was being fairly administered outweighed any potential privacy concerns of name and address and the financial information about the amount of the subsidy that was received by each individual. Could the distinction be that the Court was relying on the fact that people were putting themselves out to seek the subsidy, whereas here it's just a vessel owner and it's a registration and the vessel owners aren't here trying to seek a subsidy from the government. They're just registering their vessels. That is true, Your Honor. I don't believe Washington Post drew that distinction. The discussion in that case was even though there is financial information being disclosed, there was not a privacy interest found in the name and address information that was being disclosed. And we'll submit that the vessel owners are voluntarily submitting to registration and making that information available so that they can operate their vessels on the water. Doesn't the law compel them to register? I mean, I'm not sure how voluntary it is. It's sort of like saying I voluntarily have a driver's license. Yeah, I could go without it, but then I couldn't drive. So it's not like they're saying, okay, make this public because I'm voluntarily giving it to the world. True, that is absolutely true. But we also fall back on the tenant running through all the cases that name and address information is not inherently protected. Well, we're bound by menace unless it's set aside or effectively overruled. And menace doesn't say that, so you can tell me about all the cases, but the one that controls us is the one from our circuit. So menace occurred 10 years before the FLRA case that we've cited. And the FLRA case specifically holds, not that it's overturning menace, but specifically states that the identity and the purpose for which the information is sought is not considered in determining whether there is a privacy interest. And there is also case law, specifically in Washington Post, that just because the information is sought for a commercial purpose of sending out mailings does not render it protected under the exemption. And I'm paraphrasing the information in Washington Post, but FOIA is typically not meant to protect from commercial mailings directed at business needs. So neither one of these, the fact that it is a name and address or the fact that there is commercial purpose in sending out mailings, neither one of them renders it per se protected under the exemption. And there should have been discovery, and there is a disputed issue of fact, as to whether then this information is protected based on what is revealed and what is not revealed. We submit that the only thing that is being revealed here is who owns it and the address that it's registered to. That's the only information that has been withheld. Mr. Patel, I let you go over a little bit. Can you just wrap up? I mean, I think that that's pretty much the argument that we have, Your Honor. And with respect to the public interest, yes, there is the GAO report out there that provides this information, but the GAO report is specific to the time that it was rendered. It's not ongoing. It's not evergreen. Until a new report is put out, there is no information available about whether the registrations are accurate and whether the agency is accurately recording the information. Okay. Thank you, Your Honor. Counsel, thank you all for your arguments. The matter will stand submitted.
judges: CLIFTON, SANCHEZ, Korman